**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH C. COLACICCO. Individually** | : | **CIVIL ACTION (MMB)** |
| **and as Executor of the Estate of LOIS ANN** | : | |
| **COLACICCO, Deceased** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **APOTEX, INC., and** | : | |
| **APOTEX CORPORATION** | : | **NO. 05-CV-5500** |

**O R D E R**

   **AND NOW**, this _____ day of _____, 2009, upon consideration

of Plaintiff's Motion to Sever Claims Against Smithkline Beecham d/b/a GlaxoSmithKline and to

Transfer Claims Against Apotex, Inc., and Apotex Corporation, and of Apotex, Inc., and Apotex

Corporation's Response in Opposition thereto, it is hereby **ORDERED and DECREED** that said

Motion is **DENIED**.

                              **BY THE COURT:**


                              _____
                              **MICHAEL M. BAYLSON, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH C. COLACICCO. Individually** | : | **CIVIL ACTION (MMB)** |
| **and as Executor of the Estate of LOIS ANN** | : | |
| **COLACICCO, Deceased** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **APOTEX, INC., and** | : | |
| **APOTEX CORPORATION** | : | **NO. 05-CV-5500** |

**APOTEX'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO SEVER CLAIMS AGAINST GLAXOSMITHKLINE AND
TO TRANSFER CLAIMS AGAINST APOTEX, INC., and APOTEX CORPORATION**

Plaintiff has filed a Motion to Sever Claims Against GlaxoSmithKline (pursuant to Rule 21, **F.R.Civ.P. 21**) and to transfer his claim against Apotex, Inc., and Apotex Corporation (hereinafter "Apotex") from this Court to the Eastern District of New York (pursuant to **28 U.S.C. § 1404(a)**. The grounds for the relief requested are not separately set forth in a Motion and supported by a Memorandum of Law, but instead are set forth entirely in the supporting Memorandum of Law.  For the ease of the Court's consideration of Plaintiff's Motion and of this Response in Opposition, the Response will be presented in the same way.

However, Apotex does note here some confusion as to the first part of Plaintiff's Motion, the Motion to Sever Claims Against GlaxoSmithKline, because Apotex is unaware of any claims that remain against GlaxoSmithKline.  At the hearing on June 18, 2009, the Court advised counsel for GlaxoSmithKline that it is no longer a party to this action because Plaintiff did not appeal the portion of the Court's prior Order dismissing all claims against GlaxoSmithKline for lack of a duty owed to Plaintiff.  Although the Court granted Plaintiff 30 days in which to challenge those rulings on the basis of new case law, no such challenge was raised.

As to the portion of Plaintiff's Motion that seeks to have the case transferred from this Court

to the Eastern District of New York, Plaintiff utterly fails to present any argument that would compel such relief.  By choosing this forum to bring his case in the first place, Plaintiff has declared it acceptable with regard to all the private factors the Court is to consider on a motion to transfer for forum *non conveniens*.  Furthermore, this Court's investment of time and energy in the prosecution of this matter militates against changing forum on all the public factors the Court is to consider.

**WHEREFORE**, for the foregoing reasons and those that follow in the accompanying Memorandum of Law, Defendants Apotex, Inc., and Apotex Corporation respectfully request that the Court deny Plaintiff's Motion.

Respectfully submitted,

**RAWLE & HENDERSON LLP**

By:_____
Charles A. Fitzpatrick, III, Esquire
*cfitzpatrick@rawle.com*
Arthur B. Keppel, Esquire
*akeppel@rawle.com*
Attorneys for Defendants Apotex, Inc., and Apotex
Corporation
Atty I.D. Nos.  23212/47773
The Widener Building
One South Penn Square
Philadelphia, PA 19107
(215) 575-4200
Fax (215) 563-2583

Date: September 7, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH C. COLACICCO. Individually | : | CIVIL ACTION (MMB) |
| and as Executor of the Estate of LOIS ANN | : | |
| COLACICCO, Deceased | : | |
| | : | |
| v. | : | |
| | : | |
| APOTEX, INC., and | : | |
| APOTEX CORPORATION | : | NO. 05-CV-5500 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**APOTEX'S RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO SEVER CLAIMS AGAINST GLAXOSMITHKLINE AND**
**TO TRANSFER CLAIMS AGAINST APOTEX, INC., and APOTEX CORPORATION**

**I.     MATTER BEFORE THE COURT**

The matter before the Court is Plaintiff's Motion to sever his claims against GlaxoSmithKline from his claims against Apotex, Inc., and Apotex Corporation pursuant to **F.R.Civ.P. 21**, and to transfer his claims against Apotex, Inc., and Apotex Corporation from this Court to the Eastern District of New York pursuant to the forum *non conveniens* statute, **28 U.S.C. § 1404(a)**. Apotex, Inc., and Apotex Corporation (hereafter Apotex) oppose this Motion, believing there is no claim against GlaxoSmithKline to sever, and that there is no proper basis to transfer the matter more compelling than the reasons for it to remain in this Court.

**II.     STATEMENT OF QUESTIONS PRESENTED**

1.     Under the present procedural posture of the case, if there are claims remaining against GlaxoSmithKline to be severed, which Apotex submits there are not, should not Plaintiff's Motion to Sever be denied?

     **Suggested Answer:   Yes**

2.     Under the present procedural posture of the case, given that Plaintiff brought the case here, several motions were presented, briefed, argued and decided here, the matter has been on

appeal from those decisions to the Third Circuit Court of Appeals, and thereafter to the United States Supreme Court, from which it was remanded to the Third Circuit, and from there to this Court, which once again has assumed jurisdiction over it, held a hearing on it, issued a scheduling order, including a briefing schedule on the issue of preemption as recently analyzed by the Supreme Court in *Wyeth v. Levine*, 129 S.Ct. 1192 (2009), and directed that discovery be commended, and were such discovery has commenced, should not this Court retain jurisdiction over the matter and deny Plaintiff's Motion to Transfer?

       **Suggested Answer:  Yes.**

## III.   **BACKGROUND**

       The present matter has been pending before this Court since Plaintiff chose this forum and filed his original Complaint here on November 21, 2005, against Smithkline Beecham d/b/a Glaxosmithkline ("GSK"), a Pennsylvania Corporation, and Apotex, Inc., a Canadian corporation located in Toronto, Canada, and Apotex Corporation, a Delaware corporation located in Florida. The underlying basis for Plaintiff's claim is that the Defendants failed to include adequate warnings as to the risk of suicide with the antidepressant paroxetine hydrochloride, GSK's Paxil$^{®}$ and Apotex's generic, and as a result his wife was prescribed and took paroxetine for her depression, and committed suicide.

       Both GSK and Apotex filed motions to dismiss under Rule 12(b)(6) asserting, *inter alia*, that the failure to warn claims are preempted by the Federal Food, Drug and Cosmetics Act, as amended. The Court undertook a very careful analysis of all the issues raised in the Motions, but it focused special attention on the issue of preemption. Thus, while the Motions were pending and the Court had the opportunity to explore the full breadth of the issues involved, on a number of occasions the Court asked the parties to submit supplemental briefs on a variety of discrete issues.  Once the

parties' briefing was complete, the Court held oral argument on March 17, 2006, at which it grilled the parties for all sides with probing questions as to the issues raised in the Motions, including the issue of preemption.

During the course of that oral argument the Court identified several issues that it believed required closer review, and it asked the parties to address them in an additional supplemental brief. At the oral argument the Court also identified issues that would warrant dismissal of certain of Plaintiff's claims, but that might be cured by an amended pleading, so Plaintiff was given the opportunity to amend his complaint.  He did so, and the parties submitted further briefs to the Court arguing for and against dismissal of the Amended Complaint, including the issue of preemption.

At this point the Court again considered the full array of issues before it, and believing there was a further resource that might assist it in understanding them, the Court requested that the Food and Drug Administration (FDA) submit an *amicus* brief addressing the issue of preemption as it related to the facts and circumstances of this case in particular.  In a subsequent letter to the FDA, the Court identified certain specific issues it wanted to FDA to address in its brief.  Upon receipt of the FDA's *amicus* brief, the Court invited the parties to submit whatever reply they felt appropriate to the government's *amicus* brief, which all the parties did.

Having thus been informed by the extensive briefing of the parties, by the *amicus* brief of the FDA, and by its own extensive research of the issues, the Court rendered its decision in an epic and oft cited opinion, holding that the claims against all Defendants are preempted by the FDCA. ***Colacicco v. Apotex, Inc.***, 432 F.Supp.2d 514 (E.D.Pa. 2006) *aff'd* 521 F.3d 253 (3d Cir. 2008) *vacated* 129 S.Ct. 1578 (2009).  As evidenced by the subsequent history in the citation, that decision was appealed to the Third Circuit Court of Appeals, which affirmed, albeit on a somewhat narrower basis than this Court's original decision.

3

The Third Circuit's decision was taken to the United State Supreme Court, which had before it at that point a similar preemption issue in the case of *Wyeth v. Levine*, 129 S.Ct. 1187 (2009).  The *Colacicco* petition for writ of *certiorari* therefore was held pending the decision in *Wyeth*, and when *Wyeth* was decided, the *Colacicco* petition was granted and the matter remanded to the Third Circuit for consideration in light of *Wyeth*.  After supplemental briefing from the parties, rather than reconsider the question, the Third Circuit instead vacated its judgment and remanded the case to this Court for further proceedings consistent with *Wyeth*.  In compliance therewith, this Court held a hearing on June 18, 2009.  At the hearing the Court announced that Plaintiff's failure to appeal the portions of its original decision dismissing the claims against GSK without reference to preemption rendered those decisions final, and therefore the docket was amended to remove GSK as a party in this case.

In light of the passage of time, however, the Court did give Plaintiff thirty days in which to challenge (by way of motion for reconsideration) any of those non-preemption holdings on the basis of new Pennsylvania or federal case law that would militate in favor of a different result.  No such motion was filed.  The Court also set forth a schedule for discovery to commence, focusing initially on the issues relevant to preemption as defined by the Supreme Court in *Wyeth*.  The Court also set forth a briefing schedule for a motion for summary judgment on the preemption issue, starting with Apotex's Motion and Brief to be filed October 16, 2009, Plaintiff's Brief to be filed November 6, 2009, and Apotex's Reply Brief to be filed by November 18, 2009.  The Court announced its intent to rule on the issue of preemption under *Wyeth* by the end of the year.  The Court also set discovery and other dispositive motion deadlines for early 2010.

## IV.   <u>ARGUMENT</u>

Apotex respectfully submits that under the current procedural posture of this case, Plaintiff's Motion to Sever the Claims against GSK must be denied because if any claims remain in this action against GSK, severance is not proper, and the Motion to Transfer the case from this Court to the Eastern District of New York must be denied because to do so would result in a monumental waste of the resources this Court has expended over the past nearly four years managing the issue of preemption as it applies to the facts and circumstances of this case.

### A.   **If Plaintiff Has Any Claims Against GSK to be Severed, Severance is Not Proper**

Apotex has been unable to determine precisely what relief Plaintiff seeks with his Motion to Sever the claim against GSK.  Apotex's confusion begins with Plaintiff's admission that "[i]n June 2009, this Court re-affirmed its dismissal of the claims against GSK on grounds other than federal preemption", Plaintiff's Memorandum of Law at p.3, and later that "[t]he claims against GSK have been dismissed, and GSK is no longer in this case as a party."  **Id**. at p.4.  Two sentences later, however, Plaintiff argues in support of severance of the claims against GSK that, "while there is no prejudice to the Defendants resulting from severance, the failure to sever further delays final resolution of Plaintiff's claims against GSK."  **Id**. at pp.4-5.  Hence, Apotex's confusion – the resolution of what claims against GSK will be delayed by a failure to sever?

It almost sounds as though Plaintiff is planning to appeal the Court's dismissal of his claims against GSK, but believes he cannot do so until those claims have been severed from the ongoing claims against Apotex.  This belief is fostered by Plaintiff's argument in this section of the Memorandum of Law that "[d]eterminations of claims that are severed pursuant to Rule 21 are final and appealable without the need for certification under Rule 54(b) – unlike claims that are bifurcated under Rule 42(b).  *Official Committee of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 354

(E.D.Pa 2000) *citing U.S. ex rel. LaCorte v. Smithkline Beecham*, 149 F.3d 227, 231 (3d Cir. 1998) ('severed claim proceeds as a discrete suit and results in its own final judgment from which appeal may be taken')."  Plaintiff's Memorandum of Law at p.4.

If Plaintiff believes he still has claims to pursue against GSK, then his argument for severance under Rule 21 is misleading.  For example, he presses that, consistent with the case law he cites in favor of severance, such "would promote the expeditious resolution of this litigation", which is relevant to the present Motion only if it means the litigation **against Apotex**.  However, Plaintiff's meaning appears to be otherwise because in his very next sentence he cautions that, while severance will not prejudice Defendants (which can only mean Apotex), "the failure to sever further delays final resolution of Plaintiff's claims **against GSK**."  **Id**. at p.5 (emphasis added).

Furthermore, the assertion that severance of Plaintiff's claims against GSK would cause "no prejudice to the Defendants" runs afoul of the case law upon which Plaintiff relies.  From this District, Plaintiff relies principally on *Official Committee of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352 (E.D.Pa. 2000), which recognizes that **Rule 21, F.R.Civ.P.**, permits the Court "'to construct a case for the efficient administration of justice'", and that its application "requires balancing of several considerations, including 'the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation.'"  *Official Committee*, 190 F.R.D. at 355 (citations omitted).  The Court goes on to recognize a list of specific factors to be applied.  **Id**.

As to these specific factors, however, one Court has refused to apply what it calls "the multi-factored test" because a careful review of its pedigree discloses it originally was stated for the purpose of applying an entirely different Rule.  *The Norwood Company v. RLI Insurance Company*, 2002 U.S.Dist. LEXIS 5974, *5 fn. 2 (E.D.Pa. 2002).  According to the *Norwood* Court,

Rule 21 is a vehicle most commonly used to correct the permissive joinder of a party under **Rule 20, F.R.Civ.P.**, where such joinder has proven to be problematic.  **Id**. at *4.  Furthermore, in deciding whether to sever a party after permissive joinder under the Rules, "'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  **Id**. at *6 (citation omitted).

Before the foregoing law can be applied in this case, however, the Court first must determine to what it is to be applied.  Plaintiff asks that his claim against GSK be severed from his claim against Apotex, so it is his claim against GSK to which the law must be applied.  If, in fact, Plaintiff still has a claim to pursue against GSK, meaning one that was not dismissed by the Court in its original Order and that now is not final for want of appeal at that time, it can be a claim arising only out of his original complaint, as amended, filed against GSK and Apotex.  The claims asserted therein against GSK and the claims asserted therein against Apotex, albeit distinct, nevertheless arise from and relate to Plaintiff only upon proof of the same core set of facts.

As such, if Plaintiff has a pending claim against GSK, and that claim is severed from his claim against Apotex, Plaintiff's intent appears to be to have the two claims proceed forward as discrete claims determined separately.  Under such a scenario, judicial resources are wasted, not conserved, yet Plaintiff's own analysis requires conservation.  Furthermore, Plaintiff blithely dismisses without discussion the possibility of prejudice to the Defendants, necessarily including GSK because this discussion is meaningless unless GSK is still a Defendant.  The Defendants clearly are prejudiced where there is a risk of inconsistent findings of fact and/or verdicts. Finally, Plaintiff makes no argument whatsoever in support of the third element of his own standard of persuasion (and as the moving party he has the burden of persuasion), his own convenience.

As in ***Valentine v. Sonthineni***, 2002 U.S.Dist. LEXIS 22557 (M.D.Pa. 2002), where the

7

defendants to be severed are "inextricably intertwined in the plaintiffs' suit", the complications of severance outweigh any potential benefits. "Pursuant to Rule 21 of the Federal Rules of Civil Procedure, severance and transfer of claims against defendants is permissible when the defendants are peripherally connected to the dispute in question." *Valentine*, 2002 U.S.Dist. LEXIS 22557 at *13. Similarly, in *U.S. ex rel. LaCorte v. SmithKline Beecham*, 149 F.3d 227, 231 (3d Cir. 1998), the District Court agreed to sever only the sole claim among the numerous plaintiffs (*qui tam* relators under the Federal False Claims Act) that the Court held was neither settled by the United States nor barred by the False Claims Act, so that that lone action could proceed. Although that specific determination of the District Court was not before the Court of Appeals, the ultimate determination of the District Court was affirmed. *See also Bancmortgage Financial Corporation v. The Guarantee Title & Trust Company*, 2000 U.S.Dist. LEXIS 15448, *8 (E.D.Pa. 2000)(refusing to sever even ancillary claims where "[j]udicial economy and interest in non-conflicting judgments are paramount" and at risk if severance is permitted).

Apotex therefore opposes Plaintiff's Motion to Sever his claim against GSK from his claim against Apotex.

**B.   Plaintiff's Claims Against Apotex Should Not be Transferred Out of This District**

Plaintiff's second argument is that the action should be removed from this District and transferred to the Eastern District of New York pursuant to **28 U.S.C. § 1404(a)** "[f]or the convenience of the parties and witnesses". Although there is no definitive list of factors for the Court to consider in deciding whether to transfer venue, there are "a number of both private and public interests that the district court may consider when adjudicating a motion to transfer." *Copley v. Wyeth, Inc.*, 2009 U.S.Dist. LEXIS 62440 (E.D.Pa. 2009). Thus, the Court is charged with "'consider[ing] all relevant factors to determine whether on balance the litigation would more

conveniently proceed and the interest of justice be better served by transfer to a different forum.'"

***Americananglian Environmental Technologies v. Doherty***, 461 F.Supp.2d 359, 363 (E.D.Pa.

2006).  "The party seeking to transfer the case has the burden of establishing the need for the

transfer." ***Allegheny Technologies, Inc. v. Strecker***, 2007 U.S.Dist. LEXIS 98674 *15 (W.D.Pa.

2007).

      Plaintiff's opening thought on this issue, that the most critical events giving rise to the claims

in this action occurred in New York, so venue in the Eastern District of New York is most

appropriate, Plaintiff's Memorandum of Law at p.5, simply is not consistent with the law, which

requires consideration of much more than that single fact.  Plaintiff's analysis also fails to account

for the fact that he is the one attempting to change the venue, rather than a defendant attempting to

overturn his choice of forum.  In every case to which Plaintiff cites, and every case within each of

those cases, the moving party is a defendant asking the Court to change the venue from that which

the Plaintiff has chosen.  That this is almost exclusively a defendant's tool undoubtedly is the reason

for the familiar maxim that "'a plaintiff's choice of forum is entitled to great weight and is not to be

disturbed unless the balance of convenience strongly favors the defendants' forum.'" ***Copley***, 2009

U.S.Dist. LEXIS at *6 (citation omitted); ***Labrot v. John Elway Chrysler Jeep on Broadway***, 436

F.Supp.2d 729, 731 (E.D.Pa. 2006)("Plaintiff's choice of forum is a paramount consideration in any

determination of a transfer requests").  The fact that Plaintiff is the moving party here, however,

should not disturb this maxim.  To the contrary, baring some change in Plaintiff's circumstances, it

logically remains a "paramount consideration" because it clearly continues to represent Plaintiff's

carefully considered preference as to where to bring his action, and that preference is entitled to

great deference.

### 1)   *Private Interests*

Furthermore, the fact that Plaintiff himself originally chose this forum also informs the Court's consideration of the private factors it must consider in deciding whether to change venue for the convenience of the parties.  The private interests have been described as including "(a) the plaintiff's forum preference as manifested in the original choice, (b) the defendant's preference, (c) whether the claim arose elsewhere, (d) the relative convenience of the parties as indicated by their relative physical and financial condition, (e) and the location of the witnesses, books and records (but only to the extent that the witnesses, books or records may actually be unavailable for trial in one of the fora)." *Copley*, 2009 U.S.Dist. LEXIS 62440 at *5.

The fact that Plaintiff originally chose this forum in which to bring his action takes the first factor out of the equation entirely unless there has been a change in his circumstance or in the circumstances relating to the evidence he will need to prove his case. *See Standard v. Stoll packing Corporation*, 210 F.Supp. 749, 750 (M.D.Pa. 1962)(denying plaintiff's motion to transfer where "[t]he situation as to plaintiffs' witnesses, medical and otherwise, is no different to-day than it was when they voluntarily instituted suit in this District").  Although it is his burden to do so, Plaintiff has not offered any explanation whatsoever for his change of mind and why it now is his desire to have the case tried in the Eastern District of New York.

All Plaintiff does is provide exhibits in support of his assertion that New York is where the care and treatment during which the events at issue in this case, the prescription, purchase and consumption of the antidepressant paroxetine, arose.  Even accepting the facts asserted by these exhibits as true does nothing to advance Plaintiff's argument, however, because Plaintiff does not argue that these facts are different from the facts that existed when he voluntarily chose to bring his action in the Court.  Rather, he suggests the difference now is that GSK has been dismissed from the

suit.  The only way this would be a fact relevant to the present Motion is if the action was brought in this Court because it is the sole forum where Plaintiff could get jurisdiction over GSK.  Plaintiff does not make this argument because – for obvious reasons – it would be absurd to do so.  Thus, when Plaintiff filed his Compliant in this Court he did so voluntarily and for reasons that clearly outweighed any possible inconvenience to him.

Other than his own personal inconvenience, which is not a factor, ***Toll Brothers v. Nationwide Property & Casualty Insurance Company***, 2005 U.S.Dist. LEXIS 23545 *13 (E.D.Pa. 2005)("[p]arty witnesses are presumed to be willing to testify in either forum despite any inconvenience"), the courts have recognized the need to consider the convenience or inconvenience to a party's fact witnesses or relative access to a party's documentary proof.  In this regard, the Court's analysis should consider "the availability of compulsory process for attendance of unwilling witnesses [and] the cost of obtaining attendance of willing witnesses".  ***Labrot***, 436 F.Supp.2d at 731.  If Plaintiff had any real concerns about obtaining the cooperation of the witnesses he believes will be necessary for trial, such that they would have to be subpoenaed, or otherwise obtaining their presence in court here in Philadelphia, he would not have voluntarily brought the action here originally.  Furthermore, Plaintiff has not established, or even attempted to demonstrate, that any of the fact or medical witnesses he will need in fact are beyond the subpoena power of this Court, such that compelling their attendance would be any different between the two fora.

It also is not a compelling argument that the rigors of obtaining the presence of willing witnesses in Philadelphia are any greater.  Plaintiff already has determined this is not a material factor for him by choosing to bring the action in Philadelphia originally.  Furthermore, the distances to this Court versus to the Eastern District of New York from where the witnesses are located (per the Exhibits attached to Plaintiff's Motion) in fact are not that much greater and there is easy

11

turnpike access to this Court.  ***Coppola v. Ferrellgas, Inc.***, 250 F.R.D. 195, 199 (E.D.Pa. 2008) (where both fora are relatively close, "factors related to the convenience of the parties do not render one forum significantly more convenient than the other").  Furthermore, with regard to the location and availability of "books and records" relevant to the litigation, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis."  ***Lomanno v. Black***, 285 F.Supp.2d 637, 647 (E.D.Pa. 2003).

The remaining private consideration is the preference of the defendants.  As was discussed **supra**, motions to transfer venue pursuant to **28 U.S.C. § 1404(a)** are almost exclusively the province of defendants who wish to change the forum over the objections of the plaintiff who chose it in the first place.  Unlike that archetype, the present motion is presented by Plaintiff, and the opposition is from Defendants.  Plaintiff chose this Court, and Apotex responded by retaining local counsel to protect its interests within the jurisdiction of this Court.  If the Court grants Plaintiff's request to transfer the case to the Eastern District of New York, Apotex will have to retain new counsel, licensed to practice in the new forum, in order to protect its interests there.  This will be a great inconvenience to Apotex, in addition to a great expense, where new counsel will have to become familiar with the law and facts already familiar to present counsel.

In ***Standard***, **supra**, the plaintiffs, residents of the Western District of Pennsylvania, originally brought their diversity action in the Middle District.  After 19 months, however, they filed a motion to transfer the action to the Western District.  The Defendants, New Jersey corporations, opposed the motion on the ground that the plaintiffs did not present a sufficient basis for the transfer to carry their burden on the motion.  The Court agreed, noting first that the trial of the case would not be expedited.  ***Standard***, 210 F.Supp. at 750.  Also of concern to the Court was that "it may be quite inconvenient for defendants now to arrange for their Harrisburg counsel, who have already

done considerable work on the case, to conduct the trial in Pittsburgh; it would especially be so if they were also required to engage Pittsburgh counsel … ." **Id**.

Plaintiff has not presented the Court with any argument, compelling or otherwise, that a weighing of the private interests militates in favor of his Motion.  Yet, it is "'the moving party [who] must support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a).'"  **Labrot**, 436 F.Supp.2d at 731 (citation omitted); **Coppola**, 250 F.R.D. at 197.

### 2) *Public Interests*

"The considerations also include 'public interests,' such as (a) the enforceability of the judgment, (b) practical considerations that could make the trial easy, expeditious or inexpensive, (c) the relative administrative difficulty in the two fora resulting from court congestion, (d) and the local interest in deciding local controversies at home."  **Copley**, 2009 U.S.Dist. LEXIS 62440 at *5-*6. Plaintiff's only guidance to the Court on the public interest factors is his suggestion that "transfer … to New York will not significantly disrupt this litigation or result in a waste of judicial resources." Plaintiff's Memorandum of Law at p.7.  In making this point, Plaintiff is correct that the case has spent the majority of its time in the appellate courts, but he completely overlooks how it got to the appellate courts in the first place, and its posture upon remand back from the appellate courts.

This Court spent a significant amount of time and effort developing the record of this case, fact and legal, upon the Defendants motions to dismiss, including extensive briefing by the parties, and invited briefing by the FDA as *amicus*.  That effort culminated in the issuance of an appropriately comprehensive, and by now oft cited, opinion in support of the Court's determination that the claims against the Defendants were preempted by the FDCA.  That determination was

13

affirmed by the Third Circuit Court of Appeals, albeit on somewhat narrower grounds than those upon which this Court had relied.  The Supreme Court granted *certiorari* but, significantly, did not reverse.  Rather, the Supreme Court vacated the judgment of the Third Circuit and remanded the matter to that court for reconsideration in light of the Supreme Court's recent decision in ***Wyeth v. Levine***, 129 S.Ct. 1192 (2009).

The Third Circuit did the same, and remanded the matter back to this Court for reconsideration in light of ***Wyeth***.  Without intending here to brief the applicability of ***Wyeth*** to the facts of this case, which brief this Court has directed is to be presented no later than October 16, 2009, clearly ***Wyeth*** was not decided in a vacuum.  Therefore, all this Court did to prepare itself to address the original issue of preemption as that issue was presented to it by the Defendants, will be necessary background upon which this Court will rely in completing the job it started three years ago as it has been directed to do by the Third Circuit.  To suggest that transferring this matter now to a Court that has not done any of the foregoing, but that will have to do so to comply with the direction of the Third Circuit, will not "result in a waste of judicial resources" seems almost specious.

Another component of the "practical considerations that could make the trial easy, expeditious or inexpensive" public factor that the courts have addressed is the relative significance of what law will be applied and which court, the transferor or the transferee court, would be better situated to apply that law.  "This factor alone, though, is insufficient to meet Defendant's burden as federal courts routinely apply the law of other jurisdictions in diversity matters." ***Labrot***, 436 F.Supp.2d at 732.  This analysis is especially appropriate where the law to be applied is not so complicated as to advocate heavily in favor of having the matter tried in the forum whose law will control. ***Coppola***, 250 F.R.D. at 203 (citing 15 **Wright, Miller & Cooper**, ***Federal Practice and Procedure***, § 3854 at 266-267 for the proposition that familiarity with state law is not given

14

great weight, particularly when the applicable state law appears clear).

Although, like most of the factors the Court is meant to consider, this factor is not addressed by Plaintiff, it nevertheless should be given no weight. First, the state law components of the claims against Apotex are, as the Court clarified in its June 18, 2009, Order, principally negligence based and therefore not complicated. Furthermore, the Court already has demonstrated its familiarity with the New York law as it relates to this case because state law was very much a part of the failure to state a claim aspects of both Apotex's and GSK's original Rule 12(b)(6) motions to dismiss.

Finally, although not argued by Plaintiff as such, another factor of the public interest components of the Court's analysis is whether the original forum should be required to decide the matter if it has no connection to it. Plaintiff suggests that, with the dismissal of GSK, Pennsylvania lost all connection to the case. As this Court is well aware, however, under federal law, the warnings on the label of a prescription generic drug is inextricably intertwined with the label approved by the FDA for the listed brand name drug. While Plaintiff may dispute the extent to which that is so, he does not and cannot completely disassociate the development of the generic drug from the regulatory controls over the listed brand drug.

Thus, as Plaintiff admits, "many of the facts related to the development of warnings associated with Paxil occurred in Pennsylvania", Plaintiff's Memorandum of Law at p.6, so even though GSK no longer is a party to this action, events relevant to the claim against Apotex occurred in Pennsylvania and Pennsylvania continues to have a connection to this action. A careful review of the cases which have considered this factor also discloses that it is given weight only when there is something uniquely local about the case. In *Americananglian Environmental Technologies*, **supra**, the underlying issue in the case was the enforcement of significant judgments against several local municipalities such that "[t]he outcome of this action could also vitally affect their residents[;

15

d]ue to the particularly local nature of and interest in this matter, it is especially fitting for a judge in the [transferee forum] to oversee the enforcement … ." *Americananglian*, 461 F.Supp.2d at 364; *and see* **Wallace v. Mercantile County Bank**, 2006 U.S.Dist. LEXIS 82565 *15 (E.D.Pa. 2006)(plaintiffs' claim asserted wrongful use of civil process in a Maryland court, court held transfer to District of Maryland would be proper because "[t]he state of Maryland has a strong interest in ensuring that litigation in the Maryland state courts proceeds on lawful grounds"). The issues raised by the present action are not similarly local in nature.

In light of the foregoing law and analysis, and the fact that none of the factors to be considered when there is a request for a change of forum on convenience grounds, private or public, either apply or militate for a change in forum, Apotex strongly opposes Plaintiff's motion. Indeed, considering the Motion in light of the procedural posture of the case, the only thing that is different today from when the case originally was brought is Plaintiff now has a ruling from this Court dismissing his claims on preemption grounds, and a ruling from the Third Circuit affirming that ruling. Although those rulings ultimately were vacated, this Court has made it clear it intends to revisit the issue of preemption following a period of discovery. Apotex is not aware of any authority for the proposition that a forum *non conveniens* motion may be granted in the interest of justice on the basis of the moving party's concern his action may be dismissed by the original Court.

## V.    CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the Response in Opposition to Plaintiff's Motion, Defendants Apotex, Inc., and Apotex Corporation respectfully request that the Court deny Plaintiff's Motion to Sever his claim against GlaxoSmithKline and to transfer his claim against Apotex.

16

Respectfully submitted,

**RAWLE & HENDERSON LLP**

By:_____

    Charles A. Fitzpatrick, III, Esquire
    *cfitzpatrick@rawle.com*
    Arthur B. Keppel, Esquire
    *akeppel@rawle.com*
    Attorneys for Defendants Apotex, Inc., and Apotex
    Corporation
    Atty I.D. Nos.  23212/47773
    The Widener Building
    One South Penn Square
    16th Floor
    Philadelphia, PA 19107
    (215) 575-4200
    Fax (215) 563-2583

Date: September 7, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH C. COLACICCO. Individually | : | CIVIL ACTION (MMB) |
| and as Executor of the Estate of LOIS ANN | : | |
| COLACICCO, Deceased | : | |
| | : | |
| v. | : | |
| | : | |
| APOTEX, INC., and | : | |
| APOTEX CORPORATION | : | NO. 05-CV-5500 |

## CERTIFICATION OF SERVICE

I, Arthur B. Keppel, certify that a true and correct copy of the foregoing Response in

Opposition to Plaintiff's Motion to Sever and to Transfer was electronically filed on September 7,

2009, with the Clerk of the Court using CM/ECF and upon attorneys registered with the Court in this

matter, thereby satisfying the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil

Procedure.  At the same time a true and correct copy was served by electronic mail to the following

at the E-Mail address shown below:

**Plaintiff**
Derek Braslow, Esquire
**POGUST, BRASLOW & MILLROOD, LLC**
Eight Tower Bridge
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Telephone:    (610) 941-4204
Fax:             (610) 941-4245
E-Mail:        *dbraslow@pogustbraslow.com*

_____
Arthur B. Keppel

Date:  September 7, 2009